UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cr-00188-DC-1 |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |
| SEAN GRACE, | (Doc. No. 39) |
| Defendant. | |

This matter came before the court on March 13, 2026, for a hearing on Defendant's motion to suppress all evidence regarding Defendant's identity that was obtained from allegedly constitutionally deficient warrants. (Doc. Nos. 39, 48.) Attorney Kresta Daly appeared on behalf of Defendant. Assistant U.S. Attorney Sam Stefanki appeared on behalf of the Government. For the reasons explained below, the court will deny Defendant's motion to suppress.

**BACKGROUND**

**A.    Factual Background**

1.    Utah Investigation

In the fall of 2021, a male suspect, later identified as Defendant, came to the attention of law enforcement in Utah. (Doc. No. 44-1 at 17.) Around that time, Agent Daniel Christenson, an investigator with the Utah State Bureau of Investigation, contacted the parents of Minor Victim 1, a 13-year-old child. (*Id.*) Minor Victim 1's parents had discovered emails between their child and

1

a male suspect using the email address blueboy9999@protonmail.com and the alias "Cody Blue." (*Id.* at 17–18.) Minor Victim 1 used her school email to communicate with the male suspect between August and October 2021. (*Id.*) On October 29, 2021, Minor Victim 1 was interviewed by law enforcement. (*Id.* at 18.) Minor Victim 1 indicated she met Cody Blue on a website called Omegle.com in July 2021, and he began emailing her thereafter. (*Id.*) Minor Victim 1 stated that Cody Blue represented he was 16 or 17 years old and convinced Minor Victim 1 to send nude photos and videos of herself. (*Id.*) Minor Victim 1 said Cody Blue would ask for specific poses, and that he also sent Minor Victim 1 photos of his penis. (*Id.*) Cody Blue and Minor Victim 1 also planned to have Cody Blue's cousin, "Brandon," pick up Minor Victim 1 from her house to take her from Utah to California, but only if Minor Victim 1 would have sex with Brandon. (*Id.*) Cody Blue also gave Minor Victim 1 his phone number: 619-492-0581. (*Id.*)

Based on evidence obtained from a forensic interview with Minor Victim 1 and the email conversation, Agent Christenson authored a search warrant for Google LLC to obtain emails sent by Minor Victim 1. (*Id.*; Doc. No. 39 at 127.) A magistrate signed that search warrant on November 1, 2021. (Doc. No. 39 at 131.) The evidence received from that search warrant included emails sent from Minor Victim 1 to Cody Blue's email, blueboy9999@protonmail.com, that contained child sexual abuse imagery ("CSAM") of Minor Victim 1. (Doc. No. 44-1 at 18.) The evidence also showed that Minor Victim 1 communicated with a second email address, proboy9999@protonmail.com, which belonged to Brandon, and that both email addresses sent sexually explicit photos to and received CSAM from Minor Victim 1. (*Id.*)

Agent Christenson authored a search warrant for TextNow, Inc. ("TextNow") for the account associated with Cody Blue's 619-492-0581 phone number ("Utah TextNow Warrant"). (Doc. No. 39 at 33.) On March 14, 2022, a magistrate signed that search warrant. (*Id.* at 39.) That search warrant returned evidence of a certain Internet Protocol ("IP") address: 76.201.68.32. (Doc. No. 44-1 at 19.) Agent Christenson identified that the 76.201.68.32 IP address was serviced by AT&T Corp. ("AT&T"). (*Id.*) Agent Christenson then authored a search warrant to AT&T for the subscriber and account information linked to 76.201.68.32 IP address ("Utah AT&T Warrant"). (Doc. No. 39 at 41.) On March 17, 2022, a magistrate signed that search warrant. (*Id.*

2

at 48.) Records provided by AT&T confirmed the IP address was associated with 1119 43rd Avenue, Apt. 41, Sacramento, California 95822 ("1119 43rd Ave") and that an individual named Erin Grace was listed at that address. (Doc. No. 44-1 at 19.) Agent Christenson contacted Sacramento Police Department and learned that Erin Grace's son, Sean Grace (later identified as Defendant), was listed at that address. (*Id.*)

2.     Folsom Investigation

The Utah investigation was later forwarded to the Sacramento Federal Bureau of Investigation ("FBI") field office. (*Id.* at 17.) In May 2023, the FBI assigned Detective Patrick Thibeault of the Folsom Police Department, also a member of the Sacramento County Hi-Tech Crimes Task Force, to investigate the case. (*Id.*) Detective Thibeault examined Meta public records and learned that an Instagram account associated with email address proboy999@protonmail.com existed in October 2021 and was still active as of July 2023. (*Id.* at 18.) On July 13, 2023, Detective Thibeault authored a search warrant to Instagram ("Folsom Meta Warrant"), Dropbox, and Snapchat for records associated with proboy999@protonmail.com and blueboy9999@protonmail.com. (*Id*. at 21.) A magistrate signed the search warrant that day. (Doc. No. 39 at 50–51.) The Folsom Meta Warrant returned evidence that an account tied to proboy999@protonmail.com had received CSAM from additional minor victims. (Doc. No. 44-1 at 21.) The evidence also revealed a second phone number tied to the male suspect: 619-357-7175. (*Id.*)

On August 4, 2023, Detective Thibeault texted that number and asked if the recipient was Brandon. (*Id.*) During that conversation, Detective Thibeault learned that the male suspect was using the Snapchat username "itameu6." (*Id.*) On August 16, 2023, Detective Thibeault learned through a records check that the 619-357-7175 was also serviced by TextNow. (*Id.*) On August 18, 2023, Detective Thibeault authored a search warrant to Snap, Inc. and TextNow ("Folsom TextNow Warrant") to obtain records associated with Snapchat user "itameu6" and TextNow number 619-357-7175. (*Id.* at 23; Doc. No. 39 at 83–88.) A magistrate signed the search warrant that same day. (Doc. No. 39 at 84.) Detective Thibeault obtained evidence that Snapchat user "itameu6" requested and obtained CSAM from additional minor victims. (Doc. No. 44-1 at 23.)

Detective Thibeault also located a police report authored by the Contra Costa Sheriff's Office on August 8, 2023, which detailed that a minor child had sent CSAM to a male known as "Brandon," at the same phone number that Detective Thibeault had uncovered: 619-357-7175. (*Id.* at 22.) Detective Thibeault spoke to Detective Brendan Barckley of the Contra Costa Sheriff's Office in September 2023 and learned that that office had obtained a search warrant for TextNow records associated with the 619-357-7175 phone number. (*Id.* at 23; Doc. No. 44-3 at 2.) The evidence the officers obtained from this warrant included 76.21.68.32 IP address, and the email itsbrando6@protonmail.com. (Doc. No. 44-1 at 23.)

On August 29, 2023, Detective Thibeault authored a search warrant for AT&T records associated with IP address 76.201.68.32, which was signed by a magistrate that same day. (*Id.* at 24.) The evidence returned from this search warrant confirmed the subscriber information from the IP address that the Utah AT&T Warrant uncovered. (*Id.*) On November 9, 2023, Detective Thibeault authored a search warrant for the apartment at 1119 43rd Ave and executed a search of the residence on November 16, 2023. (Doc. No. 44-2 at 13.) Law enforcement encountered Defendant outside the residence. (*Id.*) Defendant was interviewed and, after receiving *Miranda* warnings, he confessed to much of the conduct outlined above, including posing as "Brandon" and receiving CSAM from minors. (*Id.* at 20–21.) Law enforcement also found evidence connecting Defendant to the itsbrando6@protonmail.com and proboy999@protonmail.com emails, the "itameu6" Snapchat account, the Instagram user itsbrando6, the 619-357-7175 phone number, and evidence of CSAM and CSAM production on Defendant's laptop and cell phone. (*Id.* at 27–38.)

**B.      Procedural Background**

On June 20, 2024, a grand jury returned an indictment charging Defendant with five counts of sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and (e). (Doc. No. 1 at 1–4.) On December 12, 2025, Defendant filed a motion to suppress all evidence regarding Defendant's identity. (Doc. No. 39 at 2.) On February 17, 2026, the Government filed an opposition to that motion. (Doc. No. 44.) On March 13, 2026, the court held a hearing on Defendant's motion to suppress, and the court took Defendant's motion under submission. (Doc.

4

No. 48.)

**LEGAL STANDARD**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. The Fourth Amendment's Warrants clause requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*

**ANALYSIS**

Defendant moves to suppress evidence concerning his identity obtained from the Utah and Folsom Warrants. (Doc. No. 39 at 2.) Specifically, Defendant argues that the constitutionally defective Utah Warrants led to the production of Defendant's IP address. (*Id.*) The Folsom Warrants relied on Defendant's IP address, which "ultimately leads to the discovery of [Defendant]'s name." (*Id.*) Defendant argues that as a result, the evidence regarding Defendant's identity is "tainted and must be suppressed." (*Id.*)

A.    **Constitutional Validity of the Utah & Folsom Warrants**

        1.    Utah TextNow and AT&T Warrants

                a.    *Probable Cause*

"Probable cause to search a location exits if, based on the totality of the circumstances, there is a 'fair probability' that evidence of a crime may be found there." *United States v. Perkins*, 850 F.3d 1109, 1119 (9th Cir. 2017) (citation omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding that probable cause existed.'" *United States v. Thompson*, 751 F.2d 300, 301–02 (8th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). The inquiry into whether probable cause exists is a "practical, common-sense determination" that depends on the totality of the circumstances. *Gates*, 462 U.S. at 238. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause requires only a fair probability that evidence of a crime will be found in a particular place. *United States v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003). The magistrate's determination of probable cause in support of a search warrant "should be paid great deference." *United States v.*

5

*Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citation omitted).

In determining whether a search warrant was supported by probable cause, a reviewing "court is limited to the information and circumstances contained in the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778, *amended on other grounds,* 769 F.2d 1410 (9th Cir. 1985). To determine whether a search warrant was supported by probable cause, courts look for evidence in the affidavit demonstrating (1) that a crime was committed; (2) that it was the defendant who committed the crime; and (3) that evidence of the crime would be found in the place to be searched. *Chism v. Washington State*, 661 F.3d 380, 389 (9th Cir. 2011).

Defendant argues that Agent Christenson's warrant application in the Utah TextNow and AT&T Warrants did not support the magistrate's probable cause determinations. (Doc. No. 39 at 13–19.) At this step, the court considers only the information included by Agent Christenson in the Utah TextNow and AT&T Warrant applications.[1] The affidavit in support of the Utah TextNow Warrant contains the following information:

> During the summer of 2021, an unidentified male began communicating with a 12-year-old female child via an online chatting website. The conversation continued via email. During that email conversation, on 8/24/2021, the male suspect gave the female child the telephone number listed in this affidavit and told the child to text him at that number to continue their conversation. Through a forensic interview and collection of evidence from other search warrants it was determined that the male suspect continuously asked the child for pictures and videos of herself that were sexually graphic. The male also made plans to have the female child run away from home with him so he could have sex with her. The male also sent pornographic material to the child. The information requested in this affidavit will potentially aid law enforcement in identifying the suspect.

---

[1] The court need not address whether the Utah Inteliqeunt Warrant is constitutionally compliant. Defendant's primary argument is that the Folsom Police Department used identifying information obtained from the Utah TextNow and AT&T Warrants in drafting the Folsom Meta and TextNow Warrants. (Doc. No. 39 at 101–13.) Detective Patrick Thibeault, who drafted the Folsom Warrants, does not refer to any evidence obtained from the Utah Inteliquent Warrant in his affidavits in support of the Folsom Meta and TextNow Warrants. (See *id*.) Defendant points to no evidence collected from the Utah Inteliquent Warrant that was later relied on in the Folsom Meta and TextNow Warrants. Defendant's argument that the Folsom Meta and TextNow Warrants relied on tainted evidence obtained specifically from the Utah Inteliquent Warrant is unsupported by the record before the court and is therefore unavailing.

6

(*Id.* at 35.) The affidavit in support of the Utah AT&T Warrant contained nearly identical information as the Utah TextNow Warrant. (*Id.* at 43–44.) That affidavit in support of the Utah AT&T Warrant did add that "[a] search warrant for subscriber information on that phone number returned the IP address listed in this affidavit. The IP address is operated by AT&T." (*Id.*)

The information in the affidavit in support of the Utah TextNow Warrant supported the magistrate's probable cause determination. The affidavit contains evidence of the crimes listed in the application for a search warrant—sexual exploitation of a minor, dealing in harmful material to a minor, and enticement of a minor. (*Id.* at 33–34.) Specifically, it detailed how a male suspect communicated with a minor child, solicited sexually graphic pictures and videos from her, and made plans for her to run away to engage in sex with him, as corroborated by a forensic interview with the minor and evidence obtained from other search warrants. (*Id.* at 35.) The affidavit further linked the male suspect to the TextNow phone number by stating that the male suspect provided the number to the minor and instructed her to text him there to continue their communications. (*Id.*) It also explained that the requested subscriber information would assist in identifying the suspect. (*Id.*) Accordingly, the court finds that there was sufficient probable cause to support the warrant with respect to the TextNow subscriber information.

For the same reasons, the court finds that the affidavit supporting the Utah AT&T Warrant established probable cause. In addition, that affidavit linked the IP address at issue to the male suspect by describing how a prior search warrant for the suspect's subscriber information had returned that specific IP address. (*Id.* at 43–44.)

Defendant also argues that because the affidavits do not define "sexually graphic" or "pornographic material" there was no basis for the magistrate to evaluate whether Defendant's requests were actually "sexually graphic" or that images sent by Defendant were "pornographic" in nature. (*Id.* at 7, 10). The court does agree that though "more specific descriptions" of the images "would have been desirable," the lack of detail is not fatal to establishing probable cause. *See United States v. Smith*, 795 F.2d 841, 848 (9th Cir. 1986). The Ninth Circuit in *United States*

7

*v. Patrick*, 365 F. App'x 834 (9th Cir. 2010)[2] upheld the sufficiency of an affidavit in support of a warrant that described how a lay computer technician observed "pornographic pictures of children involved in sexual acts" on the defendant's computer, though the affidavit did not contain the images themselves or more detailed descriptions of them. 365 F. App'x at 836. In upholding the sufficiency of the warrant, the Ninth Circuit emphasized that the computer technician's report was consistent, that he had no motive to lie, and that "neither additional description nor attachment of copies was required because the images depicted pornographic conduct." *Id.* at 837. Here, Agent Christenson made similar "experience-based factual conclusions" based on his own observations, which "are a normal, necessary, and perfectly acceptable part of an affidavit." *See Smith*, 795 F.2d at 848 n.7 ("The statement that the photographs depict sexually explicit conduct is similar to many other factual conclusions routinely accepted by courts in applications for warrants."); (*see also* Doc. No. 44-1 at 6–7 (describing Agent Christenson's summary of the interview with Minor Victim 1 and observations of the emails sent between Minor Victim 1 and Defendant)). Although the affidavits are relatively brief, the court concludes that under the totality of the circumstances, both affidavits provided a substantial basis for a finding of probable cause, and the magistrate's issuance of the warrants was not clearly erroneous. *See Smith*, 795 F.2d at 849.

> ### b.    *Overbreadth and Particularity*

As stated above, the Fourth Amendment requires that warrants "particularly describe[e] the place to be searched . . . ." U.S. Const. amend. IV. "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Towne,* 997 F.2d 537, 544 (9th Cir. 1993) (internal quotation marks and citations omitted). To satisfy the particularity requirement, the "description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir.

---

[2] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

2015) (quoting *United States v. Smith*, 424 F.3d 992, 1004 (9th Cir. 2005)). The specificity requirement can be satisfied by identification of categories of items, "depending on the circumstances of the case and the type of items involved." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). The purpose of the breadth requirement "is to limit the scope of the warrant by the probable cause on which the warrant is based." *Fries*, 781 F.3d at 1151 (quoting *Smith*, 424 F.3d at 1004).

Defendant argues that the Utah TextNow and AT&T Warrants are overbroad and lacking in particularity. (Doc. No. 39 at 14–15.) Defendant takes issue with the fact that the Utah TextNow Warrant requested "any and all account information" for the TextNow account associated with the 619-492-0581 phone number. (*Id.* at 14, 34.) Defendant argues that the Utah AT&T Warrant's request of a "laundry list" of undefined terms violates the Fourth Amendment's particularity requirement. (*Id.* at 15.) The Government argues in opposition that "[e]ven assuming the Fourth Amendment required" a warrant supported by probable cause to obtain Defendant's non-content subscriber information, the Utah TextNow and AT&T Warrants were not overbroad despite requesting a range of subscriber data. (Doc. No. 44 at 21.) Defendant argues in reply that the Utah Warrants should "have been more narrowly tailored to seek only information directly relevant to identifying the user of the specific account at the specific time of the alleged offense." (Doc. No. 45 at 6.)

The Utah TextNow Warrant requested the following information for the phone number 619-492-0581:

> Please provide any and all account information including, but not limited to, subscriber information (e.g. name, address, alternate telephone number, e-mail address, etc.), billing information (e.g. billing name, billing address, billing telephone number, etc.), payment information (e.g. payment method, payment account number, etc.) complaint information, and all toll records from the time period of 8/24/2021 - 10/15/2021.

(Doc. No. 39 at 34.) The Utah AT&T Warrant requested the following information for the IP address 76.201.68.32 from August 24, 2021 through October 15, 2021:

> 1. Registration Information (service(s) used/requested, service type and status, service start date/time, last use date/time, prior registration(s), and prior associated email addresses; 2. Names

9

(subscriber names, usernames, screen names, member IDs); 3. Addresses (residential, business, mailing, mail-forwarding and email, including alternate or recovery email addresses); 4. Phone Numbers (including alternate or recovery phone numbers); 5. Device Identifiers (MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI")); 6. Internet Protocol Addresses (logins, logouts, registration IPs); 7. Session Logs (session dates, times, durations); 8. Connection Logs (including local and long-distance telephone records); 9. Transaction Records (transactional receipts and history); 10. Purchase History (including online "app-store" transaction logs and or physical "in-store" transaction logs with device identifiers); 11. Payment Information (means and sources of payment for service(s), including billing records, credit card(s) and or bank account number(s); 12. Other Subscriber Numbers or Identities.

(Doc. No. 39 at 42.) Both warrants are particular because they unambiguously call for TextNow and AT&T to disclose all account information associated with a specific phone number and an IP address, respectively. *See United States v. Bickle*, No. 2:10-cr-00565-RLH, 2011 WL 3798225, at *14 (D. Nev. July 21, 2011), *report and recommendation adopted*, No. 2:10-cr-0565-RLH-PAL, 2011 WL 3705446 (D. Nev. Aug. 24, 2011) (finding a warrant that called for Microsoft to disclose "all records and information in Microsoft's possession associated" with a certain email to be unambiguous and sufficiently particular); *United States v. Evanovich*, No. 2:24-cr-00079-DJC, 2026 WL 61507, at *5 (E.D. Cal. Jan. 7, 2026) (finding the particularity requirement to be satisfied where the "warrant describes the specific relevant categories of data to be seized with the highest degree of specificity possible, given the digital form of the evidence involved and the nature of the circumstances of the case").

As for breadth, both warrants are specifically limited in temporal scope based on the alleged crime at issue, which Defendant does not dispute. (Doc. No. 39 at 34, 42.) Further, the court does not find the warrant to be overly broad in its authorization to obtain account information. As the Government points out, "[t]he Ninth Circuit has repeatedly upheld warrants authorizing the seizure of the items which establish the identity of persons in control of premises." (Doc. No. 44 at 22) (quoting *Bickle*, 2011 WL 3798225, at *21) (finding that

10

information regarding identification of a Hotmail account, including subscriber information, IP addresses used, log files, means and sources of payment, all tended to establish the identity of the Hotmail account holder); *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015) (finding that a warrant to search defendant's Facebook account was not overbroad primarily because the warrant only authorized search of the account associated with defendant's name and email address for evidence of violations of certain crimes, even though the warrant contained no temporal limitations). Accordingly, the court rejects Defendant's arguments and concludes that the Utah TextNow and AT&T Warrants satisfy the specificity requirement under the Fourth Amendment both as to breadth and particularity.

c.      *Good Faith Exception*

Because the court finds that the Utah TextNow and AT&T Warrants were supported by probable cause, the court need not address whether the "good faith" exception applies. *See United States v. Leon*, 468 U.S. 897, 906 (1984). However, the good faith exception provides an alternative ground for denying Defendant's motion.

Under the exclusionary rule, evidence obtained pursuant to an invalid warrant is subject to suppression. *United States v. Henderson*, 906 F.3d 1109, 1114–15 (9th Cir. 2018). However, "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," and the "exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" *Leon*, 468 U.S. at 906 (citation omitted). "The good-faith exception precludes the suppression of evidence seized by officers who acted 'in objectively reasonable reliance' on a search warrant that is later declared invalid." *United States v. Artis*, 919 F.3d 1123, 1133 (9th Cir. 2019) (quoting *Leon*, 468 U.S. at 922). To determine whether the exception applies, courts consider "whether the police misconduct that led to the discovery of the illegally obtained evidence is itself subject to the good-faith exception. If it is, suppression of the evidence seized pursuant to the warrant will not be justified." *Artis*, 919 F.3d at 1133.

For the same reasons the Utah TextNow and AT&T Warrants were supported by probable cause, law enforcement officers "relied on the search warrant[s] 'in an objectively reasonable

11

manner.'" *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 706 (9th Cir. 2009) (citation omitted). As the court will discuss in more detail below, the affidavits in support of the Utah TextNow and AT&T Warrant applications did not contain materially false information, and any deficiency in the warrant applications was not so obvious as to render belief in probable cause entirely unreasonable. *See United States v. Bohannon*, No. 19-cr-00039-CRB-1, 2020 WL 7319430 (N.D. Cal. Dec. 11, 2020), *aff'd sub nom. United States v. Bohannon*, No. 21-10270, 2023 WL 5607541 (9th Cir. Aug. 30, 2023). Further, law enforcement officers across multiple jurisdictions obtained many warrants that were unquestionably in compliance with the Fourth Amendment during all phases of their investigation into Defendant's conduct. (*See* Doc. Nos. 44-1; 44-3.) Accordingly, the court finds that even if the Utah TextNow and AT&T Warrants were constitutionally deficient, the good faith exception applies, and the exclusion of evidence is not warranted. *See United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008) ("Good faith reliance exists if the agents' affidavit establishes 'at least a colorable argument for probable cause,' and the agents relied on the search warrant in an objectively reasonable manner.").

       *d.*     *Folsom Warrants*

     Defendant argues that the Folsom Meta and TextNow Warrants are constitutionally defective because they relied on an unconstitutionally obtained IP address and other identifying evidence from the Utah TextNow and AT&T Warrants. (Doc. No. 39 at 2.) Because the court finds that those warrants were constitutionally compliant, the Folsom Meta and AT&T Warrants' reliance on the evidence returned from those warrants does not violate the Fourth Amendment.

     2.     <u>Defendant's Reasonable Expectation of Privacy in his IP Address</u>

     The Fourth Amendment protects "certain expectations of privacy" in addition to property interests. *United States v. Rosenow*, 50 F.4th 715, 737 (9th Cir. 2022) (quoting *Carpenter v. United States*, 585 U.S. 296, 304 (2018)). "When an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as reasonable," the Supreme Court has held "that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Id.* The Supreme Court has further explained, however, "that a person has no legitimate expectation of privacy in information he

12

voluntarily turns over to third parties." *Rosenow*, 50 F.4th 737 (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979)).

The Ninth Circuit in *Rosenow* rejected a Fourth Amendment challenge to a warrantless search of defendant's Facebook subscriber and log-in information. In that case, the government issued subpoenas to Facebook for the defendant's basic subscriber and IP information. The defendant argued this was an unconstitutional search because the subpoenas were issued without a warrant supported by probable cause. *Id.* at 737. The Ninth Circuit reaffirmed, however, that a defendant has no expectation of privacy in an IP address or basic subscriber information because that information is willingly shared with third parties. *Id.* 737–38.

Relying on *Rosenow*, the Government argues that the Fourth Amendment does not protect non-content identifiers relating to Defendant, primarily the IP address from which he corresponded with Minor Victim 1. (Doc. No. 44 at 15.) Defendant argues in reply that the Government's "assertion that no Fourth Amendment protection exists for [IP] addresses is not supported by the current state of the law." (Doc. No. 45 at 3.) Defendant, however, does not further explain this assertion nor does he cite to any legal authority in support of his argument. The court agrees with the Government that because "[c]ourts have consistently held that internet users have no expectation of privacy in their IP addresses," Defendant's motion fails to the extent that he seeks to suppress the IP address that, according to Defendant, ultimately lead to law enforcement's discovery of his identity. *See Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *4 (S.D. Cal. Nov. 3, 2025); *see also United States v. Hagood*, No. 13-cr-00393-RMW, 2014 WL 2918271, at *2 (N.D. Cal. June 26, 2014) ("As a general matter courts have not recognized any reasonable expectation of privacy in an IP address.") (citing *United States v. Forrester,* 512 F.3d 500, 509–10 (9th Cir. 2008)).

### 3.    Independent Source Doctrine

Though the court finds that the Utah TextNow and AT&T Warrants were supported by probable cause, the independent source doctrine provides another alternative ground for denying Defendant's motion. Evidence qualifies as "fruit of the poisonous tree" when "the illegal activity tends to significantly direct the investigation to the evidence in question." *United States v. Johns*,

13

891 F.2d 243, 245 (9th Cir. 1989) (quoting *United States v. Chamberlin*, 644 F.2d 1262, 1269 (9th Cir. 1980)). The Government bears the burden of showing that evidence is not the fruit of an illegal search or seizure. *Johns*, 891 F.2d at 245 (citation omitted). The "independent source" exception to the "fruit of the poisonous tree" doctrine allows evidence that is "actually found by legal means through sources unrelated to the illegal search" to be admitted. *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)). To demonstrate that evidence obtained unlawfully had been independently acquired through an untainted source, the Government must show that information gained in violation of the Fourth Amendment did not affect "[1] law enforcement officers' decision to seek a warrant or [2] the magistrate's decision to grant it." *United States v. Saelee*, 51 F.4th 327, 335 (9th Cir. 2022) (quoting *Murray v. United States*, 487 U.S. 533, 539–40 (1988)).

Here, an independent investigation by the Lafayette Police Department and Contra Costa Sheriff's Office led to the discovery of evidence regarding Defendant's identity. (Doc. No. 44-3.) On September 5, 2023, Officer Stephen Otico from the Lafayette Police Department obtained a search warrant for the Snapchat accounts associated with the usernames "itameu6" and "itsbrando6," the phone number 619-357-7175, and email itsbrando6@protonmail.com. (*Id.* at 5.) In the affidavit in support of that search warrant, Officer Otico detailed how he reviewed the text messages between Minor Victim 5 and an individual referred to as "Brandon," (later identified as Defendant), which contained nude photos of Minor Victim 5. (Doc. No. 44-3 at 11–12.) Brandon used the phone number 619-357-7175, the same phone number identified independently by Detective Thibeault, to communicate with Minor Victim 5. (*Id.*) Officer Otico also stated that Minor Victim 5 told him that she had sent photos to Brandon via Snapchat, but that she had deleted her Snapchat account. (*Id.*) The affidavit also includes that Officer Otico previously authored search warrants that were granted and signed by a magistrate in August 2023 to Snapchat and TextNow accounts associated with Minor Victim 5. (*Id.* at 12.) Through those warrants, Officer Otico and Detective Barckley, another office investigating the case, obtained additional evidence that Brandon was communicating with other minors, that he used the

14

Snapchat usernames "itameu6" and "itsbrando6," and that his TextNow account subscriber information included the 619-357-7175 phone number and itsbrando6@protonmail.com. (*Id.* at 12–13.) Importantly, there is no mention of Agent Christenson's or Detective Thibeault's investigations in that affidavit, allowing the court to reasonably infer that none of the evidence from the Utah Warrants affected "[1] law enforcement officers' decision to seek a warrant or [2] the magistrate's decision to grant it." *See Saelee*, 51 F.4th at 335 (citation omitted). The evidence the officers obtained from this warrant included that "246 of the 247 IP Address connections were from the IP Address 76.21.68.32," the same IP address identified by the Utah and Folsom investigations. (Doc. No. 44-1 at 23.)

Further, there is no evidence to suggest that prior to September 2023, those departments had any contact with Detective Thibeault or Agent Christenson. Deputy Barckley of the Contra Costa Sheriff's Office stated in an incident report dated January 17, 2024, that he spoke to Detective Thibeault in September 2023. (Doc. No. 44-4 at 2.) At that time, Detective Thibeault told Deputy Barckley that he "was also investigating [Defendant] for crimes similar to this case in other jurisdictions across the nation, and he planned to author a search warrant for Grace's residence . . . ." (*Id.*) The incident report further indicates that Detective Barckley and other officers from Contra Costa Sheriff's Office later assisted with the search of Defendant's residence, and that the case would be forwarded to Detective Thibeault for filing consideration. (*Id.*) Accordingly, the court finds that the Lafayette Police Department and Contra Costa Sheriff's Office independently discovered the 76.21.68.32 IP address, Snapchat usernames, and one of the TextNow phone numbers that were ultimately tied to Defendant and the apartment at 1119 43rd Ave and therefore finds no basis to suppress this particular evidence.

**B.    *Frank's* Hearing**

Defendant also requests a *Franks* hearing to determine the validity of the underlying affidavits in support of the Utah Warrants. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). In order for Defendant to obtain a *Franks* hearing to test the validity of an affidavit for a search warrant, he "must make a substantial preliminary showing that: (1) 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the

15

warrant,' and (2) 'the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause.'" *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019) (quoting *Perkins*, 850 F.3d at 1116).

Defendant points to the following alleged errors included in affidavits in support of probable cause for the Utah TextNow and AT&T Warrants: (1) that Minor Victim 1 stated she was 13, not 12; (2) that Defendant did not "continuously ask" Minor Victim 1 for pictures and videos of herself that were sexually graphic; (3) that "[t]he male also made plans to have the female child run away from home with him so he could have sex with her" is a misstatement because it was Minor Victim 1's idea to run away, not Defendant's; and (4) that "the collection of evidence from other search warrants" must be false because none of the previous warrants could have produced evidence about Defendant that was otherwise unknown to law enforcement. (Doc. No. 39 at 7, 16.)

As for Defendant's first argument, even if Agent Christenson intentionally or recklessly stated that Minor Victim 1 was 12 rather than 13 in the affidavits, this error is not material to finding probable cause because either age establishes Minor Victim 1 as a legal minor. As for Defendant's second and third arguments, the court rejects Defendant's assertion that these statements are false or misleading. The record presently before this court reflects that there is evidence suggesting Defendant did continually ask Minor Victim 1 for pictures and videos that were sexually graphic and that Defendant planned with Minor Victim 1 for her to run away with him, regardless of which party the idea originated with.[3] The record before the court also does not support Defendant's fourth argument. As mentioned, Agent Christenson authored a search warrant, which was signed by a Utah district court judge on November 1, 2021, to obtain emails from Google that were sent by Minor Victim 1 to Defendant. (Doc. Nos. 39 at 125, 131; 44-1 at 8.) Google provided data in response to that search warrant, which contained the email addresses Defendant used to communicate with Minor Victim 1: blueboy999@protonmail.com and proboy999@protonmail.com. (Doc. No. 44-1 at 18.) It also included video attachments sent to

---

[3] The court has reviewed the exhibit filed under seal (Doc. No. 47) and notes that the information contained therein supports this conclusion.

16

Defendant containing sexually explicit video content of Minor Victim 1. (*Id.*) Clearly, at least some evidence of Defendant's misconduct was obtained from search warrants prior to the Utah TextNow and AT&T Warrants. Accordingly, Defendant's request for a *Franks* hearing is denied. As explained, the Court finds no basis to invalidate the search warrants. Accordingly, the court will not exclude the evidence obtained from the Utah and Folsom Warrants.

## CONCLUSION

For the reasons explained above, Defendant's motion to suppress (Doc. No. 39) is DENIED.

IT IS SO ORDERED.

Dated:    **April 13, 2026**    _____

Dena Coggins
United States District Judge